Brinkman v. Brodeur                      CV-95-555-JD  06/27/96
                   UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Robert Brinkman

        v.                                   Civil No. 95-555-JD

Paul Brodeur, Commissioner


                            O R D E R


     The petitioner, Robert E. Brinkman, brought this action

under 28 U.S.C. § 2254 challenging his 1991 conviction in New

Hampshire state court.  Before the court is the respondent's

motion for summary judgment (document no. 11).[1]


                            Background

     The facts relevant to the instant motion are not in dispute.

The petitioner was tried three times in Strafford County Superior

Court on one count of aggravated felonious sexual assault.  The

first trial ended in a hung jury.  The second trial resulted in a

mistrial.  The third trial, which began three weeks after the

second trial, resulted in a conviction.  The same prosecutor and

defense counsel represented the state and the petitioner,

_____

     [1]By order of April 22, 1996, the court placed the parties on
notice that it would treat the defendant's motion for judgment on
the pleadings as a motion for summary judgment, and granted the
parties until May 17, 1996, to present all materials pertinent to
the instant motion.

respectively, during each trial.  The same judge presided over both the second and third trials.

The petitioner's defense was that he had not assaulted the eighteen-year-old victim but rather had engaged in consensual sexual intercourse with her.  The victim testified at the third trial.  The petitioner did not.

During the second trial, Sergeant Frank Santin of the Dover Police Department, who had interviewed the victim on the day of the assault, testified that the victim's demeanor changed during the interview.  He further testified that "in [his] experience over the years interviewing victims of sexual assault, [he had] found demeanor swings . . . very consistent."  Defense counsel objected, claiming that the prosecution had attempted to portray Santin as a "quasi-expert" in sex crimes and that Santin had "express[ed] an opinion vouching for the credibility of the purported victim.  In other words, saying that her demeanor is entirely consistent with undergoing the act."  The objection was overruled, and Santin testified that he found the victim's demeanor and appearance on the date of the interview "to be consistent with the demeanor and character that [he had] noted in other victims on other occasions."  Tr. at 59-62.

The following exchange occurred during the third trial, during Santin's testimony for the prosecution:

2

Q:      [by the prosecution] And how would you describe
        the way [the victim] appeared in her demeanor
        during your interview as compared with other
        victims that you have observed during your
        interview process?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

A:      I found it consistent with the emotional swings
        during her description of the event, especially
        during the critical descriptions of intimate
        sexual activity, along with her overall
        characterizations of different phases and
        circumstances I found consistent with other
        victims I've dealt with.

Tr. at 225-26.

In addition, the following exchange took place during the testimony of Officer Heather Sobeck, who did not testify during the second trial but testified for the defense during the third trial:

Q:      [by the prosecution] And in your experience it
        was, it was not unusual, was it, for a victim to
        have difficulty talking about an event?

A:      No, not at all.

Q:      And it wasn't unusual for someone to be crying
        when they're trying to describe it to you?

A:      Not unusual at all.

Q:      And it's fair to say, isn't it, that [the
        victim]'s statement to you, the way she appeared
        when she gave it, was consistent with what you had
        observed in other victims?

DEFENSE COUNSEL: I am going to object.

3

THE COURT: I'll let it stand.

DEFENSE COUNSEL: Please note my exception.

THE COURT: Yes, sir.

A:   That's right.

Tr. at 356-57.

The petitioner appealed his conviction to the New Hampshire Supreme Court, arguing, inter alia, that the trial court erred in permitting the police officers to testify that the victim's demeanor during her interview was consistent with the demeanor of other rape victims they had encountered.  The New Hampshire Supreme Court declined to address the merits of the petitioner's argument, finding that defense counsel had failed to preserve the argument for appeal by failing to make a specific objection at trial.  State v. Brinkman, 136 N.H. 716, 717-18 (1993) (citing N.H. R. Ev. 103(b)(1); State v. Giordano, 134 N.H. 718, 720, 599 A.2d 109, 111 (1991); State v. Wisowaty, 133 N.H. 604, 607-08, 580 A.2d 1079, 1081 (1990); State v. Eldridge, 135 N.H. 562, 564, 607 A.2d 617, 618 (1992)).

With the aid of new counsel, the petitioner subsequently filed a petition for a writ of habeas corpus in state court, claiming that defense counsel's failure to make a specific objection to the testimony at issue constituted ineffective assistance of counsel under both the New Hampshire and United

4

States Constitutions. The New Hampshire Superior Court (Dickson, J.) dismissed the case without requiring a hearing or a responsive pleading from the state. Brinkman v. Powell, No. 93-408 (N.H. Super. Ct.). The New Hampshire Supreme Court vacated the lower court's ruling and remanded the case for an expedited hearing. The Superior Court (Fauver, J.) held a non-evidentiary hearing and dismissed the second petition. Apparently assuming arguendo that the trial court had committed error by admitting the testimony, the court found that the petitioner had failed to demonstrate a reasonable probability that without the disputed testimony the jury would have reached a verdict of not guilty. Brinkman v. Powell, No. 93-E-070, slip op. at 5 (N.H. Super. Ct. Aug. 24, 1994). The New Hampshire Supreme Court summarily affirmed the lower court's decision and the instant action followed.

## Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56 (c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir.

5

1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. <u>Caputo v. Boston Edison Co.</u>, 924 F.2d 11, 13 (1st Cir. 1991).

The respondent argues that summary judgment is warranted because defense counsel's failure to preserve the issue of the disputed testimony for appeal did not fall beneath the standard of reasonable competence, and because the outcome of the trial was not affected by defense counsel's failure to make a specific objection. The petitioner disputes the respondent's first contention, and claims that the result of his appeal would have been different had defense counsel properly preserved the issue of the disputed testimony for appeal.

A finding of ineffective assistance of counsel requires proof that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the proceedings. <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir. 1996) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688-89 (1984)). To satisfy the "prejudice" prong, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694).

6

Where, as here, the alleged deficiencies bear not on the outcome of the trial but on the outcome of the appeal, the petitioner must establish a reasonable probability that his claim would have been successful before the state's highest court." See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (brackets and internal quotation marks omitted).[2]

The court assumes arguendo that defense counsel's failure to preserve the admissibility of the disputed testimony for appeal falls below the standard of competence mandated by the Sixth Amendment, and proceeds to the second prong of the Strickland inquiry, focusing on the likelihood of success of the plaintiff's claim on direct appeal before the New Hampshire Supreme Court.

In State v. Reynolds, 136 N.H. 325, 615 A.2d 637 (1992), decided four months prior to the petitioner's direct appeal, the New Hampshire Supreme Court found that the trial court committed prejudicial error by permitting a state trooper to testify that inconsistencies in an assault victim's statements were, in his opinion, not surprising. The court found that the trooper "in

---

[2]Although a showing of prejudice is not necessary "when the attorney's inadequate performance completely denies the defendant his right to an appeal," Scarpa v. DuBois, 38 F.3d 1, 13 n.7 (1st Cir. 1994), cert. denied, 115 S. Ct. 940 (1995), the petitioner's right to an appeal was not completely denied in this case. On direct appeal, the New Hampshire Supreme Court ruled on the petitioner's claim that counsel had properly preserved his evidentiary objection for appeal and on his claim that the prosecutor improperly commented on facts not in evidence.

essence told the jury that such discrepancies should not diminish the victim's credibility," thereby usurping from the jury its obligation to determine the credibility of witnesses. Id. at 328, 615 A.2d at 639; see also State v. Cressey, 137 N.H. 402, 406, 628 A.2d 696, 699 (1993) (trial court committed prejudicial error by permitting expert psychologist to testify that alleged victims exhibited symptoms consistent with those of children who had been sexually abused).

In State v. Lemieux, 136 N.H. 329, 615 A.2d 635 (1992), decided on the same day as Reynolds, the New Hampshire Supreme Court found no harmless error where the trial court permitted a social services worker who had interviewed a juvenile victim of sexual assault to testify that she had determined that the victim had, in fact, been subjected to abuse, and that she had taken steps to protect the victim and to avoid further abuse. The court distinguished Reynolds, noting, inter alia, that the testimony was not directed to a specific inconsistency in the victim's testimony, and that the most damaging testimony came from the testimony of the victim herself. Id. at 331-32, 615 A.2d 636-37; see also State v. Antcil, 134 N.H. 623, 625-26, 598 A.2d 213, 214-15 (1991) (admission of police officer's explanation for delay between dates of alleged sexual assault and date they were reported constituted harmless error where

statement merely corroborated child victim's accounts of the incidents).

Following its own independent review of the record, the court finds that the petitioner has failed to establish a reasonable probability that the result of his direct appeal would have been different but for his counsel's error at trial. As in Lemieux, neither Santin's nor Sobeck's comparisons of the victim to other victims of sexual abuse came in response to specific inconsistencies in her testimony. Indeed, the officers merely testified that the alleged victim's general demeanor was consistent with that of other victims, and did not attempt to downplay the inconsistencies of her story. Moreover, the jury had ample opportunity to assess the credibility of the adult victim during her testimony on direct and cross-examination, both of which included a graphic account of the assault. Thus, even assuming that petitioner's counsel performed unreasonably at trial, and that the testimony in question was erroneously admitted, the error was harmless beyond a reasonable doubt. See Antcil, 134 N.H. at 626, 598 A.2d at 215.

It is also not without significance that the New Hampshire Supreme Court summarily affirmed the Superior Court's finding that "it is not reasonably probable that without the officers' disputed opinions the jury would have returned a verdict of not

9

guilty." <u>Brinkman v. Powell</u>, 93-E-070, slip op. at 4 (N.H. Super. Ct. Aug. 24, 1994); <u>see</u> <u>Gardner v. Ponte</u>, 817 F.2d 183, 189 (1st Cir.) (habeas petitioner suffered no injury due to counsel's failure to prosecute appeal where state appeals court considered merits of appeal in context of petitioner's ineffective assistance of counsel claim), <u>cert. denied</u>, 484 U.S. 863 (1987). Although the petitioner was not afforded an opportunity to challenge the disputed testimony on direct appeal, his claim of prejudice is muted by the fact that he was afforded the opportunity to argue the merits of his claim to the New Hampshire Supreme Court in the context of his collateral attack on his conviction.[3]

---

[3]The Superior Court expressly stated in its opinion that, unlike a harmless error determination on direct appeal, in a collateral attack based on ineffective assistance of counsel

> the burden does not shift to the State to prove that the deficiency was harmless beyond a reasonable doubt. . . . Although an error may be reversible on direct appeal, the relevant question in a collateral claim of ineffective assistance is whether the defendant can demonstrate a reasonable probability that, but for, counsel's errors, the result of the proceeding would have been different.

<u>Brinkman v. Powell</u>, 93-E-070, slip op. at 3-4 (N.H. Super. Ct. Aug. 24, 1994) (citation omitted). Thus, standing alone, the Supreme Court's dismissal of the petitioner's ineffective assistance of counsel claim does not constitute proof that the petitioner's claim of prejudicial error would have failed on direct appeal. However, the court considers the state court proceedings, during which the petitioner was represented by

(continued...)

10

The petition for a writ of habeas corpus is denied.

### Conclusion

The respondent's motion for summary judgment (document no. 11) is granted. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

June 27, 1996

cc:  Robert Brinkman, pro se
     Ann M. Rice, Esquire

-----

[3](...continued)
counsel, as evidence on the issue of the likelihood of success of the petitioner's argument on direct appeal.

11